UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARNITA COLEMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO: 17-439 |
| | * | |
| BOSTON SCIENTIFIC | * | |
| CORPORATION, | * | |
| | * | |
| Defendant. | * | **JURY TRIAL DEMAND** |
| | * | |

## COMPLAINT

**COMES NOW** the Plaintiff, MARNITA COLEMAN, in above-styled matter and files this Complaint against the Defendant BOSTON SCIENTIFIC CORPORATION, and for causes of action would respectfully show the following:

## THE PARTIES
### *Plaintiff*

1.      The Plaintiff, MARNITA COLEMAN, is an individual above the age of 19 years old living in Mobile County, Alabama.

### *Defendant*

2.      Upon information and belief the Defendant, BOSTON SCIENTIFIC CORPORATION (hereinafter referred to as "Boston Scientific") is a corporation doing business in Alabama with its principle location at 300 Boston Scientific Way, Marlborough, Massachusetts  01752-1234.

## FACTS

3.      The Plaintiff, Marnita Coleman, had her spleen rupture and underwent an emergency spleen/gall bladder removal operation during February of 2015 in Mobile, Alabama by Dr. William Richards, MD, a surgeon at the University of South Alabama hospital (hereinafter "USA Hospital").

4.      During the emergency spleen/gall bladder removal operation (hereinafter "the Operation") or sometime thereafter, Ms. Coleman was given a "pigtail-style" catheter, believed to be model # M001271320 FLEXIMA APDL FIRM 8F/25CM, (hereinafter "The Catheter"), placed and sutured into the cavity of where her spleen was just removed to drain abscess fluid out of Coleman's body.  The Catheter was manufactured, distributed, and sold by Defendant Boston Scientific.

5.      Ms. Coleman was released and sent home by her healthcare providers eight (8) weeks after her Operation.

6.      The Catheter remained in Ms. Coleman, draining the abscess fluid from her body. Ten (10) weeks after the spleen removal surgery, Ms. Coleman's healthcare providers began to remove the Catheter, pulling some of the tube out of the body and cutting the visible tubing. Ms. Coleman went back to the Hospital several times over the course of three to four weeks to have her healthcare providers slowly remove the Catheter from her body.

7.      Ms. Coleman was constantly sick during the months after her Operation. During the time leading up to September 30, 2015, Ms. Coleman constantly had urinary

tract infections, nausea, fever, fluid in her lungs, and lost a staggering amount of weight. She was malnourished, weak, and close to death.

8.      On or about September 29, 2015, Plaintiff underwent exploratory surgery done by Dr. Richards at the USA Hospital in Mobile County, Alabama.

9.      Dr. Richards found the sutures from the Catheter inside Ms. Coleman's body during the September 29, 2015, exploratory laparotomy, incision and drainage of abdominal abscess, and removal of foreign body.

10.     Dr. Richards informed Ms. Coleman several days after the September 29, 2015 surgery that the sutures from "the Catheter" used during the operation had come out and the Catheter had broken off, and was causing her serious health problems by remaining in her abdomen, including but not limited to: urinary tract infections, nausea, fever, lungs filling up with fluid, abdominal abscess and fluid, a perforated colon, cardio myopathy, weight loss, and other maladies.  It was not until after September 29, 2015 that Ms. Coleman discovered that the cause of her recent injuries was the sutures and pieces of the Catheter that broke off in her body during her recovery from her spleen removal surgery.

11.     Upon information and belief, Dr. Richards filed a report with the Food and Drug Administration (hereinafter "FDA") regarding the Catheter used on Ms. Coleman, to report a possible defect or malfunction. Dr. Richards told Ms. Coleman that the Catheter, also referred to as the pig-tail drain, malfunctioned and caused her serious injury and near death.

12.     The Catheter and its components reached the Plaintiff without substantial change in the condition in which the Catheter was designed, manufactured, assembled,

3

sold, and/or otherwise distributed, and was being used in a foreseeable manner by the Plaintiff.

13.    The Catheter was properly used and installed by Ms. Coleman's healthcare providers during the time of her spleen removal surgery for the purpose that the Catheter was intended to be used for.

14.    Only much later did Ms. Coleman learn that a recall had been issued on the Catheter and that Boston Scientific issued an "Urgent Medical Device Field Correction Notification" letter dated March 18, 2009.  The recall ended on February 23, 2012.

## JURISDICTION

15.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of citizenship and the amount in controversy exceeds $75,000.00, excluding interest and costs.  This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

16.    Venue of this action is proper in Mobile, Alabama as the sale of the product and all or a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Mobile, Alabama.

## AGENCY

17.    Whenever it is alleged that one Defendant committed an act, it is also meant that the Defendant committed said act or acts through its officers, directors, agents, employees, servants, or representatives, acting with full authority, by virtue of express,

4

apparent, or implied authority and agency within the course and said scope of any employment and/or with full ratification of the other Defendant(s) named in the Complaint.

## CAUSES OF ACTION
### COUNT ONE
*Product Liability / AEMLD*

18.     Plaintiff realleges and adopts by reference the allegations of Paragraphs 1 through 17, inclusive by reference herein.

19.     During the year 2015 and for some time prior thereto, Defendant Boston Scientific was engaged in the business of manufacturing, assembling, selling, packaging, and/or distributing medical devices, including catheters, and their components to the general public in the United States and Alabama, including a Flexima Pigtail Style Drainage Catheter product that was sold to and used in treating the Plaintiff on the occasion complained of in this Complaint.

20.     Defendant Boston Scientific, during said period of time and for valuable consideration, designed, manufactured, assembled, sold, packaged and/or otherwise distributed the said Catheter product to healthcare providers for treatment of the general public.

21.     The Catheter is classified as a Class II device, pursuant to 21 U.S.C. 360c(a)(B).

22.     The Catheter was used for its normal and intended use and consumed by the Plaintiff without knowledge of its defective condition, despite being defective before leaving Defendant Boston Scientific's control.

23.     The Catheter was not reasonably safe when being used in a foreseeable manner but to the contrary, it was defective and unreasonably dangerous when used by the Plaintiff.  The Defendant knew, or in the practice of following FDA federal regulations, should have known that said Catheter was unreasonably dangerous when being used in accordance with FDA regulations.  Plaintiff avers that the Defendant owed Plaintiff certain duties imposed by law and that these duties were breached because the Catheter was unreasonably defective as a result of one or more of the following actions by the Defendant:

a)      Proper procedures were not in place to prevent contamination of the Catheter that adversely affected the quality of said Catheter, in violation of 21 C.F.R. § 820.70(e);

b)      Proper procedures were not established and maintained to ensure that the design requirements relating to the Catheter were appropriate and addressed the intended use of the device, including the needs of Plaintiff Coleman, in violation of 21 C.F.R. § 820.30(c);

c)      Failing to investigate and identify the action(s) needed to correct and prevent recurrence of nonconforming products and quality problems in the manufacture of the Catheter, in violation of 21 C.F.R. § 820.100(a);

d)      Failing to establish and maintain adequate installation and inspection instructions for the Catheter, in violation of 21 C.F.R. § 820.170; and

e)      Failing to validate the design of the Catheter to ensure that it conformed to the defined user needs and intended uses, like the way it was used on Marnita Coleman, in violation of 21 C.F.R. § 820.30(g).

24.     The foregoing wrongful conduct of Defendant Boston Scientific created manufacturing and design defects in the Catheter, rendering the Defendant liable to the Plaintiff due to violating federal law as cited above, the Alabama Extended Manufacturer's Liability Doctrine, Ala. Code 6-5-500 *et seq.*, and *Mink v. Smith & Nephew, Inc.*, No. 16-

11646 (11th Cir. 2017).  All of Plaintiff's claims are parallel to and not different from or in addition to the requirements of federal law.

25.     Plaintiff alleges that the acts or omissions of Defendant Boston Scientific in manufacturing the Catheter combined and concurred to proximately caused Plaintiff's damages described hereinabove and as set out in Paragraph 32 of this Complaint.

WHEREFORE, premises considered, as the conduct of Defendant caused the aforedescribed damage, Plaintiff demands judgment of the Defendant Boston Scientific in such character and quantity as allowed by law.

## COUNT TWO
### *Breach of Warranty / AEMLD*

26.     Plaintiff realleges those materials averments contained in Paragraphs 1 through 25 inclusive by reference herein.

27.     On or about September 29, 2015, and for some time prior thereto, Defendant expressly and/or impliedly warranted that the Catheter and/or its component parts were of merchantable quality and fit for normal ordinary use by healthcare providers to use on patients, including Plaintiff Coleman.

28.     Specifically, said Defendant expressly and/or impliedly warranted that the sutures, Catheter, and/or its component parts were fit for use for the general public and would not subject Plaintiff to unreasonable risks of harm and/or damage when the Catheter was inserted, used, and removed by properly trained healthcare providers following the Defendant's installation and inspection instructions.

29.     Defendants breached the aforesaid warranties by failing to comply with federal regulations due to the following actions and/or omissions:

a)      Proper procedures were not in place to prevent contamination of the Catheter that adversely affected the quality of said Catheter, in violation of 21 C.F.R. § 820.70(e);

b)      Proper procedures were not established and maintained to ensure that the design requirements relating to the Catheter were appropriate and addressed the intended use of the device, including the needs of Plaintiff Coleman, in violation of 21 C.F.R. § 820.30(c);

c)      Failing to investigate and identify the action(s) needed to correct and prevent recurrence of nonconforming products and quality problems in the manufacture of the Catheter, in violation of 21 C.F.R. § 820.100(a);

d)      Failing to establish and maintain adequate installation and inspection instructions for the Catheter, in violation of 21 C.F.R. § 820.170; and

e)      Failing to validate the design of the Catheter to ensure that it conformed to the defined user needs and intended uses, like the way it was used on Marnita Coleman, in violation of 21 C.F.R. § 820.30(g).

30.     The foregoing wrongful conduct of Defendant Boston Scientific created manufacturing and design defects in the Catheter, rendering the Defendant liable to the Plaintiff due to violating federal law as cited above, the Alabama Extended Manufacturer's Liability Doctrine, Ala. Code 6-5-500 *et seq.*, and *Mink v. Smith & Nephew, Inc.*, No. 16-11646 (11th Cir. 2017).  All of Plaintiff's claims are parallel to and not different from or in addition to the requirements of federal law.

31.     Said Defendant's breach of the aforesaid warranties proximately caused the damages suffered by the Plaintiff as set out in Paragraph 32 of this Complaint.

WHEREFORE, premises considered, as the conduct of the Defendant proximately caused the aforedescribed damage, Plaintiff demands judgement of the Defendant, in such character and quantity as allowed by law.

## DAMAGES

32.     Plaintiff realleges those materials averments contained in Paragraph 1 and through Paragraph 31 inclusive by reference herein.  The Plaintiff was damaged as follows:

a)      she suffered bleeding, abdominal pain, emergency surgery, cardio myopathy, and other medical treatment;

b)      her abdomen, digestive system, and colon were damaged;

c)      she was caused to suffer nausea, vomiting, diarrhea, fever, and other related illnesses;

d)      she continues to suffer abdominal pain, chest pain, and other pain;

e)      emotional injuries, depression and stress;

f)      loss of income and job opportunity; and

g)      she incurred medical expenses and other expenses related to her injury.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, as the conduct of the Defendant caused the aforedescribed damage, Plaintiff demands judgment of the Defendant, in such character and quantity as allowed by law.  Plaintiff demands compensatory and punitive damages, as a jury may find appropriate under the circumstances of this case for the purposes allowed by law.

Dated this the 29th day of September, 2017.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

*/s/ John D. Richardson*
JOHN D. RICHARDSON (RIC018)
DAVID T. TRICE (TRI015)
*Attorneys for Plaintiffs*

OF COUNSEL:

RICHARDSON LAW FIRM, LLC
118 North Royal Street, Suite 100
Mobile, Alabama 36602
Telephone:   (251) 338-1695
Facsimile:   (251) 338-1698
Email:       john@richardsonlawllc.com
             david@richardsonlawllc.com

**Please serve Defendant, <u>BOSTON SCIENTIFIC CORPORATION</u>, via certified mail at the following address:**

Boston Scientific Corporation
Corporation Service Company, Inc., as registered agent
641 South Lawrence Street
Montgomery, AL 36104.

*/s/ John D. Richardson*
OF COUNSEL
